UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**AMERICAN AIRLINES, INC.,**

   Plaintiff,

v.   No. 4:23-cv-00775-P

**KIWI.COM, INC., ET AL.,**

   Defendants.

# ORDER

Before the Court is Defendant Kiwi's Motion to Dismiss. ECF No. 21. Having considered the Motion, related briefing, and applicable law, the Court concludes the Motion should be and hereby is **DENIED**.

# BACKGROUND

Kiwi is an LLC headquartered in the Czech Republic.[1] American is a corporation headquartered in Fort Worth. Kiwi operates an online travel agency; American flies planes. American says Kiwi sold tickets for American flights without authority for years. The Terms & Conditions on American's website prohibits any third party from "page scraping" the website for flight information or otherwise collecting data for a commercial purpose without American's consent. American says that's exactly what Kiwi did and seeks monetary and injunctive relief accordingly.

---

[1] Notably, American sues two related legal entities—Kiwi S.R.O. (the aforementioned Czech LLC) and Kiwi, Inc. (a Delaware corporation with its principal place of business in Miami). As Kiwi's Motion observes, the two "are separate entities, operating independently, and with neither being an agent or affiliate of the other." ECF No. 21 at 5. Kiwi says American's Complaint muddies this distinction by consistently conflating the two. American responds that "[t]he conduct alleged in the Complaint applies equally to Kiwi, Inc. and Kiwi S.R.O." ECF No. 34 at 5. For the reasons outlined in American's Response, *see id.* at 5–12, the Court agrees. The legal distinction thus has little import to the Court's jurisdictional analysis, and the Court broadly uses "Kiwi" to refer to both Defendants (signposting where distinctions are salient).

On October 6, Kiwi moved to dismiss American's Complaint under Federal Rule of Civil Procedure 12(b)(2). American responded on October 27. As Kiwi sees things, the Court cannot establish general or specific jurisdiction over Kiwi, Inc. such that jurisdiction in this District would be proper. American sees things differently. As explained in American's Response, this action arises from Kiwi's contacts with Texas and relates to Kiwi's purposeful availment of the privileges of doing business here. Moreover, American says Kiwi intentionally directed tortious conduct into this forum each and every time it held itself out as authorized to sell American tickets. Kiwi attempts to dodge this forum connection by emphasizing case law that suggests "defendants who merely process credit card transactions for merchants like [Kiwi] have not purposefully availed themselves of the forum jurisdiction where the merchant directed its business." American counters that the Complaint's jurisdictional allegations go beyond Kiwi, Inc.'s transaction-processing functionality. For the reasons below, the Court agrees with American. Because Kiwi fails to counter American's multifaceted jurisdictional allegations, the Court must deny the Motion.

## LEGAL STANDARD

"Federal courts are courts of limited jurisdiction" that "possess only that power authorized by the Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "A court must have the power to decide the claim before it (subject-matter jurisdiction) and power over the parties before it (personal jurisdiction) before it can resolve a case." *Lightfoot v. Cendant Mortg. Corp.*, 580 U.S. 82, 95 (2017). Where the latter is absent, parties may move to dismiss a complaint under Rule 12(b)(2). *See* FED. R. CIV. P. 12(b)(2). The burden rests with the plaintiff to defeat a Rule 12(b)(2) jurisdictional challenge by establishing a prima facie jurisdictional claim. *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 399 (5th Cir. 2009).

To rule on a Rule 12(b)(2) motion, federal courts must determine whether personal jurisdiction is present by looking to the law of the state in which they sit. *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)). "In Texas, courts

2

evaluate personal jurisdiction over nonresident defendants through a two-step inquiry, ensuring compliance with the state's long-arm statute and the Due Process Clause of the Fourteenth Amendment." *Bulkley & Assocs., LLC v. Dep't of Indus. Rels.*, 1 F.4th 346, 351 (5th Cir. 2021). This is ultimately a single inquiry in Texas, as "the Texas long-arm statute extends to the limits of federal due process." *Sangha v. Navig8 Priv. Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018).

## ANALYSIS

While Kiwi extensively briefs the Court's lack of general jurisdiction, American's briefing focuses only on specific jurisdiction. *See, e.g.*, ECF No. 34 at 13–14. Kiwi argues that "American's pleading establishes that the allegedly infringing conduct took place via a website that Kiwi, Inc. does not own or control" and accordingly argues that "this Court will not have subject matter jurisdiction over Kiwi, Inc." ECF No. 21 at 17. As Kiwi moves to dismiss under Rule 12(b)(2) and none of its arguments sound in Rule 12(b)(1), the Court assumes Kiwi meant to say "personal jurisdiction." *See id.* The Court's analysis thus centers on whether Kiwi's connection to this forum supports the Court's exercise of personal jurisdiction.

### A. The Court has personal jurisdiction over Kiwi.

The Parties don't dispute that Kiwi is a non-resident. *See* ECF No. 35 at 107–151 (independent auditor's report for Kiwi S.R.O. indicating entity's status/shareholders in Czech Republic); 153–55 (Florida corporate filing for Kiwi, Inc.). As such, the Court can only exercise personal jurisdiction over Kiwi if such jurisdiction satisfies Texas's long-arm statute and the Fourteenth Amendment. *Bulkley & Assocs.*, 1 F.4th at 351. As noted above, the two are coterminal, so the Court need only ask if personal jurisdiction over Kiwi satisfies due process. *Sangha*, 882 F.3d at 101. To answer this, the Court asks if Kiwi has "minimum contacts" with Texas such that imposing a judgment would not "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945). This inquiry can be distilled into three related questions. *First*, the Court asks if Kiwi "purposely directed its activities toward [Texas] or purposely availed itself of the privileges of conducting activities here." *Def. Distributed v. Grewal*, 971

F.3d 485, 490 (5th Cir. 2020). It did. *Second*, the Court asks if this case "arises out of or results from [Kiwi's] forum-related contacts." *Id.*[2] It does. *Third*, the Court asks if "the exercise of personal jurisdiction is fair and reasonable." *Id.* It is.

### 1. The case arises from commercial activity Kiwi directed toward/conducted in Texas.

Kiwi conducted extensive commercial activity in Texas vis-à-vis its allegedly illicit sales of American tickets. *See, e.g.*, ECF Nos. 1 at 1–9; 34 at 5–12. Moreover, Kiwi necessarily harvested ticket data from American's website, which expressly states that Texas law governs any disputes arising from its use. *See generally* ECF No. 35 at 42–46 (site usage guideline with Texas forum-selection clause governing transactions conducted via American's website). The Fifth Circuit has long found minimum contacts where "a nonresident defendant takes purposeful and affirmative action, the effect of which is to cause business activity, foreseeable by the defendant, in the forum state." *Miss. Interstate Exp., Inc. v. Transpo, Inc.* 681 F.2d 1003, 1007 (5th Cir. 1982). Kiwi knew American was based in Texas during the relevant time frame. *See* ECF No. 35 at 42–46. Kiwi entered contracts with American in Texas every time it obtained tickets for resale—contracts that were expressly "made and entered into in Tarrant County, Texas." *Id.* Kiwi even filed with the Texas Comptroller to conduct business in Texas and paid taxes on its profits in Texas. *Id.* at 37. Because Kiwi thus took affirmative acts beyond simply interacting with American's website, its virtual conduct in Texas was more than "merely passive" and personal

---

[2]As noted above, Kiwi's forum-related contacts must support either general or specific personal jurisdiction. The former arises where a non-resident defendant has "continuous and systematic" contacts with a state, regardless of whether the contacts relate to the claim. *See Cent. Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376, 381 (5th Cir. 2003). The Parties don't materially dispute the Court's general jurisdiction over Kiwi. But specific personal jurisdiction is different, arising where the non-resident defendant "purposefully directed its activities at residents of the forum and the litigation . . . arise[s] out of or relates to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). The Court's inquiry here solely concerns specific personal jurisdiction.

jurisdiction is proper. *See Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 317–20 (5th Cir. 2021).

Kiwi attempts a subtle sleight-of-hand on this point by focusing exclusively on Kiwi, Inc.'s role as credit-card-transaction processor, arguing "[t]hose limited activities do not suffice as the required minimum contacts with Texas such as would subject Kiwi, Inc. to specific jurisdiction in Texas." ECF No. 21 at 5–6. But Kiwi, Inc. is the exclusive supplier of American tickets to customers from Texas and contracted with American's binding Use Agreement every time it obtained American tickets for resale. Thus, even if Kiwi, Inc.'s role was narrowly tailored to credit card processing, those transactions were predicated on the entity's agreement to jurisdiction in this forum. *See, e.g.*, ECF No. 1 at 17. One such transaction would arguably suffice to trigger this Court's personal jurisdiction over Kiwi, Inc. *See Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 419 (5th Cir. 1993) ("A single act by the defendant directed at the forum state [ ] can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted."). Kiwi sold thousands of American tickets, many to Texas consumers. ECF No. 35 at 8, 18. These numerous transactions assuredly suffice for the same reason.

Its also worth noting Kiwi's insistence that Kiwi, Inc. was only involved with "credit card processing" is dubious in light of Kiwi, Inc.'s own terms and conditions. Kiwi, Inc.'s terms and conditions reference price guarantees, rebooking, cancellation, and several other travel-related functionalities. *See* ECF No. 35 at 12, 13–15. They also clearly anticipate litigating disputes in American courts, as they require binding arbitration in Miami. *Id.* at 23. In any event, the Court need not definitively decide the scope of Kiwi, Inc.'s involvement, as the forum contacts discussed above are sufficient to trigger the Court's personal jurisdiction. *See Ruston Gas Turbines*, 9 F.3d at 419. Further supporting this finding is *BidPrime, LLC v. SmartProcure, Inc.*, No. 1:18-cv-478-RP, 2018 WL 5260050, at *2–3 (W.D. Tex. Oct. 22, 2018). In *BidPrime*, a defendant raised identical arguments to Kiwi when sued for scraping the plaintiff's website. *Id.* at *2. Like here, the plaintiff in *BidPrime* alleged that the nonresident defendant hired a non-party software

developer to scrape bid requests from the plaintiff's website in Texas. *Id.* The Court found those facts supported a prima facie jurisdictional claim, holding that "[a] defendant who repeatedly and purposely obtained unauthorized access to servers he knows belong to a Texas company can reasonably anticipated being haled into court in Texas." *Id.* at *3. The same is true for Kiwi here.

So Kiwi allegedly directed commercial activity toward Texas (by contracting with American vis-à-vis its Use Agreement) and purposely availed itself of the privileges of doing business here (by, well . . . doing business here). Thus, if American's allegations are true, Kiwi "purposefully derive[d] benefit" in Texas and should be held accountable here. *Id.*; *see also Kulko v. Cal. Sup. Ct.*, 436 U.S. 84, 96 (1978). Having answered the first two questions affirmatively, the Court must next ask if any case-specific facts render personal jurisdiction over Kiwi unfair or unreasonable.

### 2. Exercising personal jurisdiction over Kiwi is fair and reasonable.

The "fair and reasonable" inquiry under *International Shoe* is essentially a catch-all provision to ensure courts consider the facts of each case in evaluating personal jurisdiction. *See Shaffer v Heitner*, 433 U.S. 186, 204 (1977) ("[T]he relationship among the defendant, the forum, and the litigation, rather than the mutually exclusive sovereignty of the States . . . became the central concern of the inquiry into personal jurisdiction."). While Kiwi eschews the aforementioned connections to Texas, it fails to explain them away. Rather, Kiwi doubles down by asserting that "Kiwi, Inc. does not maintain any operations, employees, or agents in Texas [and] also does not own any real estate or hold any permits, licenses, or bank accounts in Texas." ECF No. 21 at 6 (cleaned up). But boots on the ground aren't required for a finding of minimum contacts. *See BidPrime*, 2018 WL 5260050, at *2–3. Even absent any rank-and-file Kiwi employees in Texas, Kiwi's economic activity in this state was decidedly voluntary. In this regard, "the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed." *Burger King*, 471 U.S. at 474. Kiwi voluntarily assumed Texas obligations and

6

was allegedly caught with its hand in the cookie jar. It is only proper to hold Kiwi accountable for such conduct in this forum.

Almost seventy years ago, the Supreme Court recognized that "modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity." *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957). That was before the Internet, smartphones, laptops, and Zoom—the premise is infinitely truer now than it was in 1957. If Kiwi could orchestrate an extensive online enterprise directed toward Texas air-travel consumers, it can litigate a case arising from that enterprise in this state. This is not to say technological advances have eroded the territorial considerations of due process.[3] But Kiwi cannot escape the fact that it agreed to Texas jurisdiction (via American's website) and conducted extensive commercial activity here (by transacting with Texas-based customers). Indeed, it appears American isn't the only airline to catch wind of Kiwi's alleged scheme—Judge Brown upheld jurisdiction over similar claims against Kiwi from Southwest (with even less clear jurisdictional connections than the instant case). *See* ECF No. 89 in No. 3:21-cv-00098-E. The Court endorses Judge Brown's analysis in that case wholeheartedly in rendering the same result for American's claims against Kiwi here.

No litigation is hassle-free for a defendant in Kiwi's position. The Court sympathizes with Kiwi's concerns over litigating in Fort Worth when many relevant documents and personnel may be located in the Czech Republic. But the Court need only ask if litigating this case here would pose such unreasonable difficulties upon Kiwi that Kiwi's due process rights would be violated. *Ruston Gas Turbines*, 9 F.3d at 421;

---

[3]This point cannot be overstated, as modern plaintiffs may be increasingly enticed to stretch the limits of due process on account of the ease of litigating in a post-Zoom world. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 294 (1980) (cleaned up) ("Even if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation; the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment.").

*see also World-Wide Volkswagen*, 444 U.S. at 292–95 (explicating Supreme Court jurisprudence on the due process prohibition of inconvenient litigation). The Fourteenth Amendment keeps the State from taking life, liberty, or property without due process of the law; it doesn't keep companies from litigation in unpreferable (but otherwise proper) jurisdictions. *See World-Wide Volkswagen*, 444 U.S. at 297 (noting the Due Process Clause "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit"). If Kiwi didn't want to litigate in Texas, it shouldn't have allegedly mined ticket bids from American's website and conducted extensive commercial activity here. For now, however, that ship has sailed. The Court **DENIES** Kiwi's Motion (ECF No. 21) accordingly.

## CONCLUSION

For the above reasons, the Court's exercise of personal jurisdiction over Kiwi comports with Texas's long-arm statute and the Due Process Clause. Accordingly, the Court **DENIES** Kiwi's Motion. ECF No. 21.

**SO ORDERED** on this **30th day** of **October 2023.**

_____
Mark T. Pittman
UNITED STATES DISTRICT JUDGE